We move to the eighth case this morning, Hostettler v. Saul. You may proceed. Thank you, Your Honor, and thank you to the court and counsel. This case is a situation where the ALJ's RFC determination simply lacks any sort of rationale. She works her way towards her RFC determination with her credibility determination, and this court has recognized that the credibility determination is intertwined with RFC. And in her credibility determination, she cites mere fact that there were stairs in his place that he lived, that he utilized a scooter to get around, and that he went shopping with his mother, and that he cared for a child. None of those credibility findings have any significance in the analysis or support the with the stairs. He was supported by his rent with minimal type of work, minimal activity of watching individuals who had developmental disabilities in terms of making sure they didn't tear the pain down, the place down. No discussion about how often he did that. Stairs, again, he had surgery. During that, there was no development at all in terms of how he should navigate the stairs during the surgery. There's none of that. So you also have the situation where with the shopping, the only evidence about the shopping is his testimony, and he says that he goes with his mom and she's a great help. Again, that doesn't support an adverse credibility finding. And obviously, the court has a long standing history of noting that child care, when he's the sole provider of a six-year-old child, there's no one else that's going to do that child. That's not an appropriate basis for the credibility determination. And turning to the ALJ's rationale in terms of how she reached her RSC determination, that was striking in terms of the precision and also the fact that they all seem to be just a cookie cutter. Again, we're in a Christmas season. I like making Christmas cookies. 30 to 45 minutes for sitting, standing the same, walking the same. The only variance is the time. But how she arrives at those determinations is not remotely clear from the decision. There's no explanation from her as to... I'm sorry, go ahead. Just a second. Excuse me. Could I ask you a question, please? You may. Thank you. The... Is there a doctor's opinion in this record that establishes a basis for disabling limitations for more than 12 months at a time? There's not a specific opinion. You have the and the post-operative opinion is quite a few months afterwards. I'm sorry, I think you said... Yes, counsel, we seem to be having some continuing audio problems. I don't know if you can hear me. Does it work better if I hold the phone? Can you hear me? I can hear you. Does that work? I'm now holding the phone. Does that work better? A little bit. But apparently only one of us was allowed to talk at a time. And if if you continue, then we cannot ask questions. Okay, I apologize. My question is a fairly obvious one. And that is, I would expect a post-operative examination to for ankle replacement or anything else here, or the... This was the Achilles rupture, right? I would expect him to be in pretty tough shape for a while after those surgeries. But the question is whether we've got long-term disabling limitations found by a doctor. I think they're found by multiple doctors. You have his ankle has severe arthritis and his... And that's found, you know, early on back in September of 15. And he doesn't have the corrective surgery until March of 17. So that's well past the 12-month threshold. Just on that alone. And then you have the ongoing arthritis that's widespread. You have the kyphosis. You have multiple impairments that are ongoing and continuous. The only one that pops up out of nowhere would be the torn Achilles tendon. I understand there are serious limitations here. But again, you know far better than we do just how demanding the standard for total disability is for these benefits. And I'm looking for a doctor's opinion about limitations that would amount to completely disabling for more than 12 months. Well, again, I believe the record reflects that as a whole. He's telling his doctors about the need to lock down. No single doctor has opined as to such disabling limitations. That is correct. The only doctor that's opined in terms of functional limitations would be the doctor who performed the fusion surgery of his ankle. Thank you. And again, did other members of the court have questions before I continue? No, you can continue. All right. Thank you. The physical therapy findings post-surgery, you know, again, note significant problems that the judge didn't address. But again, we have the issue with the widespread arthritis affecting multiple joints. All of those things are not taken together. And when we look at the judge's decision, there's nothing that indicates how does she determine the time that he can sustain these activities. That is a red flag that they're all the same. In terms of these type of matters, when you're talking about as in this instance, you're talking about a narrow, narrow category of being able to work. And there's no rationalist in terms of how this judge wielded a scalpel to come up with these type of precise limitations. If she were to come along and say he can sit for, generally speaking, two hours or whatever, but you're talking about where she is saying, okay, he's going to be able to need to change positions. There's no support for where she finds her RFC determination at all on the record. I'll reserve my time. Thank you, Mr. Sir. Mr. Stein? May I please the court, Jordan Stein on behalf of the Commissioner of Social Security. Appellant comes in front of this court today with an invitation to reweigh the evidence related to his ankle and back impairments. But this court has explicitly held that that's not its role. Rather, the court's role is to review whether substantial evidence supports the ALJ's decision. Under this standard, as the Supreme Court recently set forth in the Peace Deck decision to warrant remand, Mr. Hossetter must show that no reasonable mind would accept the evidence cited by the ALJ as insufficient to support her decision. Here, the ALJ thoroughly evaluated and articulated the evidence in determining that Mr. Hossetter could perform a range of sedentary work. As such, the court should affirm the district court's decision in favor of the Commissioner. The ALJ carefully evaluated the evidence from 2015 through 2018 related to Mr. Hossetter's ankle and back impairments. In determining that Mr. Hossetter could perform sedentary work, the ALJ carefully evaluated Mr. Hossetter's left ankle impairment and noted findings and imaging showing pain relief with medication, normal gait, acceptable to full range of motion, and following left ankle replacement surgery and Achilles tendon surgery, his own podiatrist said that he was doing extremely well, walking in his own shoes without pain, had a stable Achilles tendon, had normal range of motion and strength in his left ankle, and was in no need of further treatment. And Mr. Hossetter is quite young at this time. He was still in his 30s. He still is in his 30s. The ALJ also observed that despite Mr. Hossetter's back pain and minimally invasive back surgery, imaging generally showed only mild arthritis, mild to moderate degeneration, and no neuropathy. He also routinely showed normal range of motion and acknowledged pain relief with medication. In considering Mr. Hossetter's ankle and back and joint pain in setting forth his residual functional capacity, the ALJ discussed nearly 30 separate medical visits to Mr. Hossetter's physicians, including at least seven to his rheumatologist and many more to his podiatrist. Additionally, there is no medical opinion to support total disability in this case. In response to Mr. Hossetter's arguments about his symptom evaluation, it was not patently wrong. At his hearing, Mr. Hossetter testified he lived in an apartment that required him to climb stairs. He now argues the ALJ failed to inquire precisely how he navigated the stairs to get up to the apartment, suggesting in his brief that, quote, he could have sat on his buttocks and used his arms to navigate upward and slide off one stair to the next. But as the district court noted, this is completely speculative. Mr. Hossetter did not say this at his hearing. He did not report this to the doctors, to any of his doctors, and there's no evidence in the record to support this. Additionally, because he had counsel at hearing, he is considered to have put his best foot forward, and he did not do so here. Additionally, Mr. Hossetter testified that he worked part-time checking in on other residents for his landlord in lieu of paying his rent. Mr. Hossetter alleges fault by the ALJ for failing to note that he did so on a knee scooter, but this was not required. The ALJ does not have to discuss every piece of evidence, and further, the ability to perform this service for his landlord, thereby earning his rent, merely allowed the ALJ to reasonably conclude that Mr. Hossetter was not as incapacitated as he claimed. Finally, in plaintiff's reply brief, he brings up for the first time that the ALJ allegedly erred by failing to ask the vocational expert about Mr. Hossetter's alleged need to elevate his feet and legs. This argument was waived. It was never raised at the district court, and it was not raised in appellant's brief. Additionally, there's no evidence in the record regarding appellant having to elevate his legs or feet, but for a single comment he made that he does this, but he did not say how often, how high, or for how long. Additionally, no medical source opined that this was a necessity. If there are no further questions from the court, the commissioner relies on its arguments in brief and asks the court to affirm the ruling of the district court. Thank you, Mr. Stein. Mr. Sutterfield? Just very briefly, again, the ALJ's RFC determination, when it lacks the precision it does, there has to be something in her analysis that enlightens that. The ALJ's RFC determination makes no discussion of the thoracic spine. It makes no discussion of the arthritis that is widespread. It doesn't do those things. It also makes no analysis of how he functioned from September of 12 through his recovery from his ankle fusion surgery, and which was completed as of September of 2017. Those reasons, for those reasons, when you have September 15 to that time frame, there has to be a discussion of those matters. Otherwise, this is just a mere flip of the coin, if nothing else. There's just not the analysis there. If we were talking about the difference between light work or sedentary work, something broad, that would be a different matter. We're talking about an ALJ coming in and making these very precise findings that navigate a response from a vocational expert, as opposed to something that someone can turn around and say, okay, I see how you arrived at that determination. Thank you very much. Thank you, Mr. Serfield. Thanks to both counsel and the cases taken under advisement. The ninth case for today is going to be submitted on the briefs, and the court will be in recess. Thank you very much.